As found in the May 15 Order, Respondents have met their burden of showing that the attorney-client privilege was properly asserted over documents in Categories 1 through 4 of their original categorical log because the relevant communications served a legal purpose. The original categories of documents are as follows:
1. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with anticipated and ongoing litigation with ERS bondholders.
2. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with pension reform proposals, including conversion to PayGo, the PayGo fee structure, legal theories regarding potential litigation, and treatment of benefits.
3. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with PayGo implementation, including treatment, calculation, invoicing, and collection of PayGo fees.
4. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice concerning draft pension reform legislation including circulating and commenting on interim drafts and analyses of Joint Resolution 188 and Act 106.
(Dkt. No. 443, Ex. B).
Respondents have met their burden to show the communications in Category 1 serve a legal purpose as they concern ongoing litigation. Respondents have similarly met their burden to show the communications in Category 2 serve a legal purpose as they relate to the legality of certain reform proposals and that the communications in Category 4 serve a legal purpose as they concern the legality of proposed legislation.
The communications in Category 3 relate to the "PayGo Implementation", and thus it was not clear from the description of that category whether the communications were for a legal or business purpose. However, by providing the document by document log of Category 3, Respondents have confirmed that the communications served a legal purpose. By way of example, entry number 5 of the document by document log provides "Confidential communication with in-house counsel to AAFAF and outside counsel (Dentons, O'Melveney, and Proskauer) providing and reflecting legal advice regarding memorandum on *137 Pension Issues and Action Plan." (Dkt. No. 501-1 at 2). Thus, Respondents have adequately shown that the purpose of the communications is legal and the inclusion of necessary third party advisors does not waive the attorney-client privilege.
c. Deliberative process privilege
In the May 6 Order, the Court overruled several of the Bondholders' objections to the Respondents' assertion of the deliberative process privilege. (May 6 Order at 2-6). The Court reserved decision, however, on the application of the privilege to factual information. The Court ruled that "additional submissions [were] needed for the Court to establish whether the factual information withheld from the documents should be produced." (Id. at 5). Respondents submitted supplemental information on May 9, 2019. (Dkt Nos. 502, 503) ("Mahmud Declaration" and "Pabon Declaration" respectively). In reliance thereon, the Court held that factual information was properly withheld under the deliberative process privilege. (May 15 Order at 4). Bondholders now argue that "the May 9 Submissions fail to justify the withholding of factual information." (Motion to Compel ¶ 7). Having considered the Bondholders' objection, the Court upholds its ruling that the privilege was properly asserted over factual information.[5]
In the May 15 Order, the Court held that "where disclosing the factual information will disclose the deliberative information protected by privilege, that factual information is properly withheld as well." (May 15 Order at 4). In Stalcup v. CIA, 768 F.3d 65, 70 (1st Cir. 2014), the First Circuit held that "[t]he question is not merely whether the documents contain factual information - or even whether the document is predominantly comprised of findings of fact - but rather the degree to which the facts are indissolubly linked to the broader analysis." The First Circuit held that the privilege is properly applied where "[a]lthough factual findings are indeed included in the documents, they are tethered to broader policy considerations." Id. at 71 (citing Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 983 (9th Cir. 2009) ).
Bondholders argue that "while Respondents flatly state that disclosing the factual information would, e.g. , 'reveal pension reform proposals and assumptions that were under consideration,' [ (Mahmud Declaration) ], they do not explain how that is so or what it is about the factual information that would enable the Bondholders to reverse engineer the proposals from the projection. They have therefore failed to show that the factual information cannot be segregated." (Motion to Compel ¶ 7). This is not so. Respondents provide sufficient detail concerning the withheld documents to carry their burden and show that factual information is intertwined with the privileged deliberations. By way of example, the Bondholders attack the explanation given at ¶ 4(f) of the Mahmud Declaration. (See id. ). One of the documents referenced in ¶ 4(f) is document 29 to the Amended April 14 Log (Dkt. No. 459-2). That document is described on the privilege log as "Draft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026." (Amended April 14 Log at 10-11). Through the Mahmud Declaration, AAFAF provides that document 29 consists of:
*138 Draft spreadsheet analyses of the March 13, 2017 Commonwealth Fiscal Plan providing alternative projections of general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026. The projections, which include PayGo, were used by decision makers to determine appropriate revenue and expenditure levels for government entities under the Fiscal Plan. Disclosing these spreadsheets would reveal pension reform proposals and assumptions that were under consideration, thereby revealing the decision makers' thought process.
(Mahmud Declaration ¶ 4(f)). The relevant decision to this document is the enactment of pension reform legislation. (See Amended April 14 Log at 10). To the extent that financial information is being used, AAFAF has made clear that those numbers, both pre- and post-measures, are part and parcel of the policy alternatives being discussed. AAFAF has met its burden to show that facts in these spreadsheets were thus tied to the deliberative communications between officials. The Court does not find that Respondents have provided only vague explanations for their withholding. The Court overrules the Bondholders' objection and finds that Respondents have met their burden of showing the deliberative process privilege was properly invoked over factual information.
d. Attorney work product
Finally, Bondholders contest this Court's refusal to make a definitive ruling on Respondents' assertion of the attorney work product doctrine. Respondents informed the Court on May 9 that no documents were withheld solely based on an assertion of work product. (Pocha Declaration ¶ 4). Thus, the Court held that "the Court need not rule on whether the Government Parties appropriately invoked the work product doctrine." (May 15 Order at 6). Where the Court has upheld the Respondents' assertions of privilege on other grounds, it need not reach an independent ruling on the work product doctrine. See Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1372 (10th Cir. 1997) ("we are convinced that under federal and Kansas law the critical memorandum and information sought by the motion to compel are protected by the attorney-client privilege. Since this privilege applies, it is unnecessary for us to consider the work product privilege."). Thus, the Bondholders' objection to this Court's work product holding is overruled.
III. Conclusion
For the reasons stated herein, the Motion to Compel is denied. This Court's May 6 and May 15 Orders remain unchanged.
This order resolves Dkt. No. 510 in 17-BK-3566 and Dkt No. 6984 in 17-BK-3283.
SO ORDERED.

The Court excluded certain documents from its rulings as discussed at Dkt. No. 509 at 4. Nothing herein shall be construed as a ruling on the application of the deliberative process to factual information in those documents.